## Commonwealth v. Wheatley, Sr.

*Willard Curtin,* district attorney, for Commonwealth.

*J. Leslie Kilcoyne, Sydney L. Krawitz* and *Paul R. Beckett,* for defendant.

SATTERTHWAITE, J., February 5, 1954.—Three bills of indictment against this defendant were tried together. Two thereof, September term, 1953, nos. 59 and 60, charged him respectively with the offenses of assault and battery with intent to kill and attempt with intent to kill upon the person of George Caldarelli, a State Police officer. The third, September term, 1953, no. 61, charged him with aggravated assault and battery upon the person of one Walter Leonhauser. Defendant was convicted by a jury on all three bills of

indictment and his motions in arrest of judgment and for a new trial are presently before the court for disposition.

The shootings which formed the subject of these indictments were an aftermath of a dispute arising out of the failure of defendant and his son to obtain the right to tow away an automobile disabled in an accident on the Lincoln Highway in Middletown Township, Bucks County, Pa., in the early morning hours of May 30, 1953. This dispute developed into a verbal argument between the son and Mr. Caldarelli, a State Police officer assigned to investigate the accident, and ultimately resulted in a physical altercation between young Wheatley and the officer in the course of which the officer was forced physically to subdue the young man by striking him over the head with a multi-celled flashlight, and placing him under arrest. His case has been otherwise and separately disposed of. Defendant, who had been present throughout this incident, then left the scene in the tow truck, went to his home a short distance away and, after an interval in excess of five minutes, returned in his passenger car in the glove compartment of which he carried a revolver in a holster. After he had parked his car at the scene and placed the firearm in his belt, he walked across the highway, called to the officer and, as the latter approached, drew the gun and fired it point blank at him, inflicting an abdominal wound which almost proved fatal. Other shots were also fired, both by defendant and by the officer, one of which struck a bystander, Walter Leonhauser, and inflicted an injury to both his ankles.

Although defendant contended that the shooting was either accidental or in self-defense, inasmuch as the officer, according to him, had threatened to give him the same treatment that he had previously given the son, it is apparent that the jury gave no credence to this

story. Totally unexplained was the reason for defendant's removing the gun from the glove compartment of his car and placing it upon his person as he admittedly did. The record is overwhelming that defendant's purpose was solely one of revenge and resentment against the prior action of the State Police officer. Significantly, counsel at the argument made an attack upon the sufficiency of the Commonwealth's evidence to justify the conviction of the assault upon the person of Caldarelli, apparently abandoning one of the stock reasons assigned for the motion for new trial in that the verdict was against the evidence.

Defendant's first argument challenges the action of the trial judge in submitting to the jury both indictments nos. 59 and 60, charging defendant, respectively, with assault and battery with intent to kill, and attempt with intent to kill, and the verdict of guilty on both thereof, contending that as a matter of law the two offenses merged and defendant could not be guilty of both. While it is unquestionably true that the attempt charged would be included within and merged into the completed offense if there were but one shot fired by defendant, the undisputed testimony in this case discloses that defendant fired at least three shots and possibly more at Caldarelli. The first caused the serious abdominal wound previously mentioned. Others respectively pierced the officer's leg, and struck the paving near his shoulder after he had fallen from the impact of the first. On this state of facts, defendant, in our opinion, assuming the other elements present, became guilty of an attempt with intent to kill each time that he pulled the trigger of the gun and therefore would be properly found guilty of this offense as to each of such of those shots as did not merge into and become a part of the completed felonious assault. He is fortunate in being charged with only one such offense under the circumstances.

The next matter urged by defendant in support of his motion for a new trial is the failure of the trial judge to take from the jury the question of defendant's guilt on indictment no. 61 charging him with aggravated assault and battery upon the person of Walter Leonhauser, a bystander, to whom injury was inflicted by a bullet from either defendant's or the officer's gun. Unquestionably, defendant is correct in asserting that from the evidence it was impossible to tell beyond a reasonable doubt which firearm caused this bullet wound. If that question necessarily had to be answered, defendant's demurrer to this charge should have been sustained.

However, the trial judge believed that it was unnecessary for the jury to attempt to resolve this question under the circumstances and submitted this indictment for determination under express instructions that the conduct of defendant must be found to have been the legal cause of the injury to Leonhauser, i.e., that defendant's conduct was such that it set off a chain of circumstances which, even though indirectly, naturally and probably resulted in the injury by provoking retaliatory gunfire from the officer in the performance of his duties as such or in self-defense. The jury was further told that if this injury was accidental or the officer was not so justified in firing the shots he did, then defendant should be acquitted of this charge.

This instruction was fully justified by the opinion of the Supreme Court in Commonwealth v. Almeida, 362 Pa. 596, which definitely established the proposition that civil law concepts of proximate cause not only may, but should, be carried over into criminal cases. We are not convinced that the principles enunciated in the Almeida case are confined to murder prosecutions.

In any event, even if the trial judge were in error in submitting bill no. 61 to the jury, it is manifest that

such action had no bearing upon the jury's deliberation as to defendant's guilt or innocence on bills nos. 59 and 60. This was expressly conceded by defense counsel at the oral argument.

The remaining contentions made on defendant's behalf go to the propriety of the instructions given by the trial judge in defining "intention to commit murder".

Section 710 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4710, defines assault and battery with intent to kill as follows:

"Whoever . . . stabs, cuts or wounds any person, or by any means causes any person bodily injury, dangerous to life, with intention to commit murder, is guilty of felony."

Section 711 thereof, 18 PS §4711, defines attempt with intent to kill, as follows:

"Whoever . . . attempts to cut or stab or wound, or shoots at any person, or, by drawing a trigger or in any other manner, attempts to discharge any kind of loaded arms at any person, . . . with intent to commit the crime of murder, although no bodily injury is effected, is guilty of felony."

Both of these offenses require as an essential element that the conduct of defendant be accompanied with intention to commit murder. Instructions, therefore, as to the legal concept of the term "murder" were unquestionably necessary in order that the jury might intelligently pass upon the subject. Defendant makes no complaint that the instructions in themselves were legally incorrect, but rather contends that the trial judge-fell into three errors in the course thereof: First, that there was a prejudicial aspect introduced when he assumed as a hypothetical illustration that Caldarelli had died and the within defendant were on trial for murder; secondly, that the trial judge in an undue effort to be impartial so extended and fully developed the law of felonious homicide in its various degrees

as to confuse the jury and create an improper trial atmosphere, and thirdly, that he committed error in expressing his personal opinion that the determination of the presence or absence of malice was the crux of the case presented.

We fail to see how any of these arguments demonstrate reversible error under the circumstances of this case. If defendant were prejudiced in the eyes of the jury by the introduction of the concept of murder in this trial, a matter as to which we are not convinced, it suffices to say that the question is inherently necessary under the very nature of the charges for which he was standing trial. We fail to see how the assumption of one additional fact, to wit, the death of Caldarelli, in order to illustrate the legal principles involved, in any way affected him more than the very charges themselves. Even if hypothetical actors had been created by the trial judge in his instructions, the jury would necessarily have had to relate them in their own minds to the personalties involved in the trial. There could be no possible mistake as to the nature of the offenses with which defendant was charged, inasmuch as Caldarelli himself appeared and testified as the Commonwealth's principal witness. In point of fact, the very element in question, to wit, murder, is so serious that probably the jury felt more reluctant to convict unless compelled to do so by the testimony than it would have were this question not in the case.

Relative to the allegations that the trial judge placed too much emphasis upon the law of murder and dealt with that subject for an unduly long part of his charge, we believe that defendant was not adversely affected thereby. He certainly would have had more ground for complaint if the question had not been fully defined for the jury's understanding. Under the circumstances, in order for him to be impartial, the trial judge necessarily had to develop the legal niceties of the distinctions between the various degrees of felonious homicide.

While technically he would probably have been justified in resting his definition of murder upon the legal concept of malice, which in itself constituted a substantial part of the homicide portion of the charge, he felt impelled to go further in this case for two reasons: First, under the words of these statutory provisions "intention to commit murder", the mental state necessary could be that involved in murder of either degree; the Commonwealth need not establish an intent to commit murder of the first degree in order to sustain convictions of these offenses: Commonwealth v. Vanchaski, 42 Pa. Superior Ct. 294. Compare Commonwealth v. Berardino, 302 Pa. 403. Secondly, on the other hand, "murder" as here used does not include voluntary manslaughter, even though that, as well as murder of both degrees, may involve an intentional act. See Commonwealth v. Berardino, 100 Pa. Superior Ct. 58, 63.

In view of the frequent shorthand references to the crimes in question during the course of the trial as involving "intent to kill", the trial judge felt required to point out to the jury that there was no need for the Commonwealth to prove such specific intent, a finding of malice being all that would be necessary. Conversely, there was some evidence to the effect that defendant was angry and under the influence of passion, so that, in fairness to him, the judge believed that the possibility of the mental state involved in voluntary manslaughter should also be presented to the jury for its consideration. It was therefore essential that the jury fully understand the distinctions involved. Counsel now disclaims as a theory of defense that defendant was acting under the influence of rage or passion, and contends rather that he relied solely on the grounds of accident and self-defense. Hence, he argues, that although the trial judge was concededly attempting to present the case in a totally impartial manner, in fact, the effect was to confuse and overemphasize the im-

portance of the three degrees of homicide in the minds of the jury.

There is no merit in this position. The instructions carefully pointed out that they were given not to require the jury to make any differentiation between murder in the first degree and murder in the second degree, but rather, by way of example, and in contrast to the crime of voluntary manslaughter, the mental state for which would not constitute the essential words of the statute under consideration. At the conclusion of these instructions, the trial judge commented as follows:

"To summarize, therefore, the fundamental difference between voluntary manslaughter and murder of either the first or second degree is the absence of malice in the former and the presence of malice in the latter. This distinction is most important in the present case, inasmuch as defendant cannot be guilty of either assault and battery with intent to kill or attempt with intent to kill unless he had the intent to commit murder as we have defined that term for you. If his mental state were such that had death resulted he would be guilty at the most of voluntary manslaughter, then you should return a verdict of not guilty upon those two charges against him in the present case.

"Conversely, however, if he would have been guilty of either first or second degree murder had death resulted, he would be presently guilty of assault and battery with intent to kill and possibly, attempt with intent to kill, if all of the elements appeared as we have defined them for you. Do not be misled by the words 'with intent to kill' appearing in the shorthand reference to this offense on the back of the bill of indictment. The statute which I read to you previously refers to the intention to commit murder. It does require that the Commonwealth prove the offense in that exact language."

We find no error in the offhand comment of the trial judge that the presence or absence of malice was the crux of the case in his opinion. While defendant apparently now claims to have relied only upon the theories of accident and self-defense, that position was not clear at the trial and would appear to have offered even less justification for an acquittal than the question of the mental state of defendant so submitted. In any event, those defenses were fully explained and left to the jury under instructions of which no complaint has been made. The trial judge in no way imposed his will upon that body in this expression of opinion. The following quotation from the opinion of this court in Commonwealth ex rel. Garrison v. Burke, 3 Bucks Co., 122, 127-128, is applicable:

"We fail to find anything improper in these instructions. So long as it is made clear that the expression of an opinion is not binding upon the jury and that the ultimate decision rests with that body, it is fully competent for the presiding judge to comment upon the evidence and even to express his own conclusions thereon: *Commonwealth v. Bozzi*, 169 Pa. Superior Ct. 206, 210-211 and cases cited. Furthermore, it is his duty to explain fully the various issues involved and the manner in which they should be considered in arriving at a just and proper verdict. The whole charge in the present case indicates that the trial judge was most careful to leave to the jury the various matters in issue. Relator has no grounds for complaint merely because instructions permitting his conviction, but not directing it, were given in order that a miscarriage of justice might not come about."

The other reasons originally assigned in the written motions for a new trial have apparently been abandoned since they were not pressed at the argument. Accordingly, the motions for a new trial must be denied. The respective motions in arrest of judgment

in each case, not having been pressed at the argument, must also be considered abandoned and therefore also are denied.

### Order

And now, February 5, 1954, the several motions for new trial and in arrest of judgment are respectively denied and defendant is directed to appear for sentence on Friday, February 19, 1954.